# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| QUINTEZ TALLEY | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, INMATE ACCOUNTING And CYNTHIA LINK | : | NO. 19-1589 |

## MEMORANDUM

**Savage, J.**                                                                **July 2, 2019**

Quintez Talley, an inmate at SCI-Fayette, brings this 42 U.S.C. § 1983 action against the Pennsylvania Department of Corrections, "Inmate Accounting," and Cynthia Link, the Warden at SCI Graterford. He also seeks leave to proceed *in forma pauperis*. For the following reasons, we will grant Talley leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim.

## FACTS

Talley is a prolific litigator in the federal courts. On March 8, 2017, while incarcerated at SCI Graterford, $15,000 was placed in his prison account. At that time, he owed filing fees pursuant to the Prison Litigation Reform Act in connection with three cases he had filed in the Middle District of Pennsylvania.[1] Proceeding *pro se* and *in forma pauperis*, he had consented to the deduction of those filing fees from his prison account. Accordingly, on the day that the money was deposited into his prison account, a total of $950.20 was deducted to cover outstanding fees Talley owed in those cases.

---

[1] *Talley v. Glessner*, Civ. A. No. 15-407 (M.D. Pa.), *Talley v. Wetzel*, Civ. A. No. 15-1170 (M.D. Pa.), and *Talley v. Wetzel*, Civ. A. No. 15-1698 (M.D. Pa.).

Talley alleges that Inmate Accounting, which appears to be a department at SCI Graterford, was responsible for ensuring that the payments were delivered to the Middle District of Pennsylvania. On December 20, 2018, Talley wrote to the Clerk of Court for the Middle District of Pennsylvania to inquire about the status of his payments. He received letters in response informing him that the money deducted from his prison account had not been delivered to the court. He also claims that a deduction of $3.50 taken for satisfaction of a filing fee was never delivered to the Court. Talley separately alleges that $1,123.31 was deducted from his account for "institutional fines," and that he had not "consented to nor been given notice nor an opportunity to appeal."[2]

Talley alleges that the above deductions violated his Fourth Amendment and due process rights, constituted an unconstitutional taking, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). He claims that the $1,123.31 deduction constitutes an excessive fine. Talley brings state law tort claims.

## STANDARD OF REVIEW

We shall grant Talley leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which requires us to dismiss the Complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally

---

[2] Compl. ¶ 17.

[3] However, as Talley is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). As Talley is proceeding *pro se*, we construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## DISCUSSION

### Claims Under § 1983

Talley brings his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Talley's constitutional claims fail for the following reasons.

### Liability of the Named Defendants

Talley named the Pennsylvania Department of Corrections, Inmate Accounting, and Link as the defendants in this case. However, the Pennsylvania Department of Corrections is entitled to Eleventh Amendment immunity from suit under § 1983 and, in

3

any event, is not a "person" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Likewise, Inmate Accounting, as a department of a state prison, is not a person subject to suit under § 1983. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that a prison medical department was not a "person" for purposes of § 1983). Accordingly, Talley's claims against those entities are legally baseless.

Talley has also failed to state a plausible basis for a claim against Link. He alleges that Link was "ultimately in charge of overseeing all of the daily operations" at SCI Graterford, so she is responsible for any mismanagement of his prison account. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and

4

acquiesced in the subordinate's unconstitutional conduct." *Id.* "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319.

Here, it is clear that Talley seeks to hold Link liable based solely on her position as Superintendent and not based on her personal involvement in any of the events giving rise to his claims. Accordingly, he has not stated a plausible basis for a claim against her.

### Fourth Amendment Claims

"[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."). Courts have extended that logic to conclude that the Fourth Amendment does not apply to seizures from inmate accounts. *See Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property" and does not "protect an inmate from the conversion of his property"; *Jackson v. SCI-Camp Hill*, No. 1:11-CV-1135, 2012 WL 3990888, at *5 (M.D. Pa. Sept. 11, 2012) (agreeing that an inmate "has no Fourth Amendment rights in his prison financial account" and collecting cases), *aff'd Jackson v. SCI Camp Hill*, 530 F. App'x 150 (3d Cir. 2013) (per curiam). Therefore, Talley's Fourth Amendment claims are legally baseless.

**Takings Clause Claims**

"The Takings Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'"[4] *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (quoting U.S. Const. amend. V) (alteration in original). Talley alleges that his property was "deposite[d] into Defendant DOC's bank account" and thus taken for public use.[5] However, that allegation appears to be based entirely on speculation. Thus, the Takings Clause is not implicated here. *See Roop v. Ryan*, No. CV 12-0270-PHX-RCB, 2012 WL 1068637, at *3 (D. Ariz. Mar. 29, 2012) ("A prisoner property claim only implicates the Fifth Amendment Takings Clause where the prisoner alleges that prison officials took his personal property and converted it for public use without just compensation."); *Allen v. Wood*, 970 F. Supp. 824, 831 (E.D. Wash. 1997) ("Plaintiff fails to show that property he was authorized to receive was taken for public use.").

**Eighth Amendment Clams**

Talley claims that the $1,123.31 deducted from his account for "institutional fines" violates the Eighth Amendment's prohibitions on excessive fines because he "has done NOTHING throughout his ENTIRE incarceration to warrant such a fine."[6] He adds in a footnote that he "has no idea why this large sum was taken" and that he "withholds the right to amend this Complaint to argue the fines were still 'excessive.'"[7] Although it is

---

[4] The Takings Clause applies to the states through the Fourteenth Amendment. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).

[5] Compl. ¶ 24.

[6] Compl. ¶ 25.

[7] *Id.* n.7.

6

*possible* that the fines to which Talley was subjected, it is not *plausible* because he had not pled sufficient facts giving rise to an inference that these fines were constitutionally inappropriate. Without further factual development, Talley has not stated a plausible basis for a claim. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts.").

## Due Process Claims

"'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.'" *Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))). The Pennsylvania Department of Corrections grievance procedure provides a sufficient remedy for intentional deprivations of property. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-deprivation remedy). Hence, Talley's due process claims based on the deduction of filing fee payments that were not delivered to the federal court are legally baseless. *See Pettaway v. SCI Albion*, 487 F. App'x 766, 767 (3d Cir. 2012) (per curiam) (dismissing appeal as frivolous where plaintiff alleged that "the DOC improperly deducted court costs and fees from his prison

7

account, pursuant to Act 84, over a period of years despite the fact that his 'commitment order' provided that his fine and court costs were to be paid by Allegheny County").

**RICO Claims**

The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter[, which prohibits racketeering activity,] may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). Section 1962 provides, in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962.

To state a civil RICO claim, a plaintiff must allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The RICO statute defines "racketeering activity" by enumerating a list of predicate acts. See 18 U.S.C. § 1961(1). A "pattern" of racketeering activity requires at least two predicate acts. See 18 U.S.C. § 1961(5).

Talley alleges that he is asserting "a pattern of racketeering activity . . . i.e., extortion (under color of official right/authority)."[8] Presumably, he is claiming as the predicate acts supporting his RICO claim that the defendants violated the Hobbs Act, which criminalizes interference with interstate commerce by extortion. *See Wilkie v.*

---
[8] Compl. ¶ 21.

8

*Robbins*, 551 U.S. 537, 539 (2007). The alleged extortion must have at least a *de minimis* effect on interstate commerce to violate the Hobbs Act. *United States v. Powell*, 693 F.3d 398, 402 (3d Cir. 2012). Under the Hobbs Act, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). To establish extortion under color of official right, "a public official [must have] obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992); *United States v. Pawlowski*, 351 F. Supp. 3d 840, 849 (E.D. Pa. 2018) ("To sustain a conviction for Hobbs Act extortion under color of official right, the Government must offer proof of a quid pro quo—i.e., that a public official receive[d] a payment in return for his agreement to perform specific official acts." (internal quotations omitted)).

Talley has not pled extortion. Nothing suggests that the deductions from his account were made in return for an official act. Rather, Talley alleges that the deductions were either improper or not applied for their intended purpose. The Complaint also fails to plausibly allege how the deductions from Talley's prison account by officials of the Pennsylvania Department of Corrections impacts interstate commerce. Thus, Talley has failed to state a RICO claim based on predicate acts of extortion.

**State Law Claims**

The only possible independent basis for the Court's jurisdiction over Talley's state law claims is 28 U.S.C. § 1332, which provides that a district court has jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000,

9

exclusive of interest and costs, and is between . . . citizens of different States."[9] 28 U.S.C. § 1332(a). Diversity jurisdiction requires "complete diversity," which in turn requires that "no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). "The burden of establishing federal jurisdiction rests with the party asserting its existence." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

Talley has not pled a basis for diversity jurisdiction. In any event, it appears that the parties are not diverse and that the amount in controversy does not exceed the jurisdictional threshold. Accordingly, the Court will dismiss Talley's state law claims for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, we shall dismiss Talley's federal claims as legally baseless and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). We shall also dismiss his state law claims for lack of jurisdiction.

Although it is unlikely that Talley can state a plausible claim here, in light of his *pro se* status we shall grant him leave to file an amended complaint.

/s/ TIMOTHY J. SAVAGE J.

---

[9] We will not exercise supplemental jurisdiction, having dismissed Talley's federal claims.