**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **QUINTEZ TALLEY,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-1589-KSM** |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al.,** | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                              **March 21, 2024**

*Pro se* Plaintiff Quintez Talley, an inmate at SCI Camp Hill, filed the instant lawsuit

against then-United States Magistrate Judge Karoline Mehalchick ("Judge Mehalchick")[1], the

United States of America ("United States"), the Clerks' Office and an unknown clerk of the

United States District Court for the Middle District of Pennsylvania (with the United States,

"Federal Defendants")[2], and the Pennsylvania Department of Corrections and various officials

and employees thereof ("DOC Defendants")[3] relating to the improper withdrawal of funds from

---

[1] The Court understands that while this case was pending, Judge Mehalchick was appointed to serve as a District Court Judge for the United States District Court for the Middle District of Pennsylvania. The Court refers to her as a Magistrate Judge for consistency with Plaintiff's Amended Complaint and the parties' briefing.

[2] For sake of clarity, the Court excludes Judge Mehalchick from its definition of "Federal Defendants" because she was not included on the Federal Defendants' motion to dismiss and instead was the subject of a separate statement of interest filed by the United States.

[3] Along with the Department of Corrections itself, this includes Defendants Cynthia Link, John Wetzel, Tammy Ferguson, Adam Beck, Scott Ellenberger, Brook Klinefelter, the Unknown Individuals in SCI-Benner's Inmate Accounting, and the Unknown Individuals from the Inmate Accounting Department at SCI-Graterford.

1

his inmate account.  Before the Court are three motions from the DOC Defendants[4] (Doc. Nos. 27, 43, 58), a motion to dismiss from the Federal Defendants (Doc. 56), a statement of interest on behalf of Judge Mehalchick (Doc. No. 57), and Plaintiff's motion to transfer this case to the Court of Federal Claims (Doc. No. 60).  For the reasons set forth below, the Court will grant the DOC Defendants' motions, grant the Federal Defendants' Motion to Dismiss as uncontested, dismiss Judge Mehalchick, and deny Plaintiff's Motion to Transfer.

## I.     Background

### A.     Factual Background

Plaintiff Quintez Talley is and has been a prolific litigator throughout the Third Circuit. This lawsuit relates to some of that litigation activity.  In 2015, while he was incarcerated at SCI Greene, Plaintiff filed three separate civil actions against various prison officials in the United States District Court for the Middle District of Pennsylvania ("Middle District").  (Doc. No. 9 at ¶ 8); *see Talley v. Glessner*, 15-cv-407 (M.D. Pa. Feb. 2, 2015); *Talley v. Wetzel*, 15-cv-1170 (M.D. Pa. June 15, 2015); *Talley v. Wetzel*, 15-cv-1698 (M.D. Pa. Sept. 1, 2015).  Each case was assigned in some capacity to Judge Mehalchick.  (Doc. No. 9 at ¶ 8.)  And in each case, contemporaneous with filing his complaints, Plaintiff filed motions to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (*Id.* at ¶ 9.)  With these motions, Plaintiff also filed authorizations permitting the agency holding him in custody to send a certified copy of his inmate account statement to the Clerk of Court and to "calculate and disburse funds from [his] trust account (or

---

[4] The Court previously ordered, upon request of the parties at a June 27, 2023 status conference, that these motions would be construed as motions for summary judgment solely as to the issue of exhaustion because they rely on evidence outside of the complaint, namely an affidavit from a prison official.  (Doc. Nos. 37, 59; June 27, 2023 Hr'g Draft Tr. at 20:3–21:4.)  Outside of this issue, these motions shall be construed as motions to dismiss.  With this understanding in mind, the Court will refer to these motions generally as "the DOC Defendants' motions" throughout this opinion.  Moreover, the Court notes that these motions are nearly identical.  They were filed piecewise as opposed to as one motion due to delays related to service in this matter.

institutional equivalent) in the amounts specific by 28 U.S.C. § 1915(b)." *See, e.g.*, Doc. No. 3, *Talley v. Glessner*, 15-cv-407 (M.D. Pa. Feb. 2, 2015).  Judge Mehalchick granted Plaintiff's motion to proceed *in forma pauperis* in each case.  (Doc. No. 9 at ¶ 11.)

Plaintiff claims that while at SCI Greene, he had no issues with the prison staff withdrawing funds and intermittently paying his filing fees.  (*Id.* at ¶ 14.)  However, this harmony would not last.  On January 27, 2017,[5] Plaintiff was transferred to SCI Graterford, where Defendant Cynthia Link was acting superintendent/warden.  (*Id.* at ¶ 12.)  A few months later, on March 8, 2017, while still incarcerated at SCI Graterford, Plaintiff received a deposit of $15,000 to his inmate account.  (*Id.* at ¶ 15.)  That same day, Plaintiff's monthly statement showed that $950.20 was deducted from his inmate account by staff at SCI Graterford to cover the remaining balance of his filing fees.  (*Id.* at ¶ 16; *see also id.* at 18 (Plaintiff's inmate account statement showing that $250.20, $350, and $350 were deducted from his account for "Federal Filing Fees").)  But then through correspondence with the Clerk's Office of the Middle District, Plaintiff discovered that these funds were never received by the court, and he still had an outstanding balance of $950.20.  (*Id.* at ¶¶ 16–18.)

Along with the $950.20 deducted for his filing fees, Plaintiff's inmate account statement reflected that $1,123.31 were withdrawn for "institutional fines."  (Doc. No. 9 at ¶ 25; *see also id.* at 18 (Plaintiff's inmate account statement).)  Plaintiff avers that these deductions were the result of a conspiracy against him from his time at SCI-Benner in which, under the supervision of Defendant Ferguson, Defendant Ellenberger was "'recommending' Plaintiff's prison account be assessed without any form of post-deprivation relief."  (*Id.* at ¶ 29.)  Plaintiff denies ever committing any misconduct that would warrant such fines and claims that the process through

---

[5] The Amended Complaint states that Plaintiff was moved on January 27, *2019*.  However, the Court believes, based on the surrounding allegations, this reflects a typographical error.

which these institutional fines were eventually deducted from his account was "constitutionally insufficient."  (*Id.* at ¶¶ 28, 30.)  In particular, Plaintiff alleges that he was never provided adequate notice of these deductions, that he was not provided a hearing to challenge the removal of these funds under DOC Policy DC-ADM 801 because such hearings are unavailable where "costs are known," and that he was never provided an opportunity to appeal these deductions because the issue was outside of the limited bases for appeals under DC-ADM 801.  (*Id.* at ¶¶ 29–30.)

### B.  Procedural History

#### 1.  Initial Screening

On April 12, 2019, Plaintiff filed his initial complaint in this case, which asserted claims for violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, the Takings Clause of the Fifth Amendment, and the Eighth Amendment.  (Doc. No. 2.)  He also asserted a claim for replevin.  (*Id.*)  It is undisputed that before filing his initial complaint, Plaintiff never filed a grievance regarding the deduction of $1,123.31 for his institutional fines.[6]  (Doc. No. 27-2; Doc. No. 43-2 (affidavit from Rhonda House, Facility Grievance Coordinator providing that Plaintiff never filed a grievance for any deductions from his DOC inmate account).)

Plaintiff's case was assigned to the Honorable Judge Timothy J. Savage who, consistent with this Court's obligation to screen the complaints of plaintiffs granted *in forma pauperis* status, dismissed the complaint in its entirety.  (Doc. Nos. 5, 6.)  Judge Savage held that Plaintiff's federal law claims failed and refused to exercise supplemental jurisdiction over

---

[6] The Court notes that the affidavit the DOC Defendants attached to their motions addressed whether Plaintiff ever filed a grievance as to the deduction of $1,123.31 for his institutional fines but did not address whether he filed a grievance as to the deduction of $950.20 for his filing fees.  (Doc. No 27-2; Doc. No. 43-2.)

Plaintiff's state law claims.  (Doc. No. 5.)  Plaintiff then filed the Amended Complaint currently before the Court, which introduced numerous additional Defendants, including the Federal Defendants, Judge Mehalchick, and multiple of DOC officials.  (Doc. No. 9.)  The Amended Complaint asserts claims against all Defendants for violations of the Due Process Clause of the Fourteenth Amendment, civil conspiracy under both § 1983 and Pennsylvania law, interference with contract, conversion, breach of contract, and promissory estoppel.  (*Id.*)  It also asserts claims against the DOC Defendants for violations of the RICO Act and the Takings Clause of the Fifth Amendment.  (*Id.*)  All claims are against the Defendants in their official and individual capacities.  (*Id.* at ¶ 7.)  Judge Savage shortly thereafter issued an Order dismissing Plaintiff's Amended Complaint, finding that it failed to cure the defects identified in the Court's prior Memorandum.  (Doc. No. 10.)  Plaintiff then filed a notice of appeal.  (Doc. No. 11.)

On appeal, the Third Circuit largely affirmed the Court's analysis and agreed that the Amended Complaint did not cure many of the deficiencies outlined in the Court's prior Memorandum.  (Doc. No. 17.)  However, the Third Circuit vacated and remanded the Court's decision as to Plaintiff's due process claim related to his institutional fines.  (*Id.*)  And since this claim provided the Court a basis to exercise supplemental jurisdiction, the Third Circuit also remanded so that the Court could rule on Plaintiff's state law claims.  (*Id.*)  Thus, following Plaintiff's appeal, the only claims that remain are his claim for violations of the Fourteenth Amendment Due Process Clause, solely as it pertains to the deduction of his institutional fines, and his state law claims.[7]

---

[7] While the Third Circuit kept Plaintiff's due process claim related to his institutional fines alive, the Court understands the Third Circuit to have affirmed the dismissal of his due process claim related to the withdrawal and loss of his filing fees.  (*See* Doc. No. 17 ("We vacate the District Court's judgment to the extent that it dismissed Talley's claim that the deductions from his inmate account *for institutional fines* violated his procedural due process rights. . . With respect to Talley's remaining claims, however, we

## 2.    Remand and Motions to Dismiss

On remand, Plaintiff's Amended Complaint was ordered to be served, and the case was reassigned to the undersigned shortly thereafter on March 27, 2023.  (Doc. No. 31.)  All Defendants filed motions to dismiss, except Judge Mehalchick, who was the subject of a Statement of Interest filed by the United States.  (Doc. Nos. 27, 43, 56, 57, 58.)  After the first group of DOC Defendants filed their motion to dismiss, (Doc. No. 27), Plaintiff filed a motion for leave to take discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (Doc. No. 36).[8]  The Court granted Plaintiff's motion.  (Doc. No. 37.)  The Court then held a Zoom status conference on June 27, 2023, during which the parties agreed, and the Court held, that the DOC Defendants' motions to dismiss (Doc. Nos. 27, 43, 58),[9] which rely on an extrinsic affidavit, would be converted into motions for summary judgment as to the issue of exhaustion.  (*See* June 27, 2023 Hr'g Draft Tr. at 20:3–21:4; Doc. Nos. 38, 59.)  Plaintiff informed the Court during that same status conference that, despite having filed a Rule 56(d) motion, he would not need discovery to respond to the Defendants' motions.  (June 27, 2023 Hr'g Draft Tr. at 20:22–21:4.)  Plaintiff also orally requested, and the Court granted, an extension of time for Plaintiff to file his responses to Defendants' motions because he was being transferred to another prison and

---

affirm because we agree, essentially for the reasons stated in the Memorandum that the District Court entered on July 3, 2019, that his amended complaint did not cure the pleading deficiencies in his first complaint.") (emphasis added).)

[8] Recognizing that they relied on extrinsic materials, all the DOC Defendants' motions were titled "motion to dismiss or, in the alternative, motion for summary judgment."  (Doc. Nos. 27, 43, 58.)

[9] Motions were filed on behalf of the DOC, Cynthia Link, John Wetzel, Tammy Ferguson, Adam Beck, Scott Ellenberger, and Brook Klinefelter.  No motion was filed on behalf of the Unknown Individuals in SCI-Benner's Inmate Accounting or the Unknown Individuals from the Inmate Accounting Department at SCI-Graterford.  Therefore, these latter Defendants are excluded from the Court's analysis on the DOC Defendants' motions.  Nevertheless, as discussed elsewhere in this opinion, the claims against these individuals will be dismissed on separate grounds.  *See infra* at p. 48 n.35.

needed time to receive his belongings. (*Id.* at 21:5–24.)  After Plaintiff confirmed he had been successfully moved and retrieved his belongings (Doc. No. 50), and once all Defendants were properly served and submitted dispositive motions, the Court ordered Plaintiff to respond to all pending motions no later than September 15, 2023.  (Doc. No. 59.)  Rather than filing a response to any of the pending motions, on August 23, 2023, Plaintiff filed a motion to transfer the case to the Court of Federal Claims.  (Doc. No. 60.)  On October 2, 2023, having not received any oppositions from Plaintiff, the Court *sua sponte* granted Plaintiff additional time to respond to the pending motions and set a deadline of November 15, 2023.  (Doc. No. 64.)  However, to date, Plaintiff has failed to respond to any of the outstanding motions.

## II.    Legal Standards

Defendants move to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  The DOC Defendants have also raised exhaustion defenses, which the Court considers under the standard applicable to motions for summary judgment brought pursuant to Rule 56.

### A.    Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement.'"  *Id.*  Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (quotation marks omitted).

7

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the Plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").  It is the Defendants' burden to show that a complaint fails to state a claim.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

Because Plaintiff is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 703 F.3d 239, 244–45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned pro se litigants'" like Plaintiff.  *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.* (quoting *Mala*, 704 F.3d at 245).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F.3d at 245).

### B.    Rule 12(b)(1)

Rule 12(b)(1) provides that a court may dismiss a complaint for "lack of subject matter jurisdiction" over the case.  "In evaluating a Rule 12(b)(1) motion, the Court first must determine whether the motion attacks the complaint on its face or on its facts."  *McCurdy v. Esmonde*, No. CIV.A.02-4614, 2003 WL 223412, *4 (E.D. Pa. Jan. 30, 2003).  "A facial challenge under Rule 12(b)(1) argues that the complaint fails to allege subject matter jurisdiction, or contains defects in the jurisdictional allegations."  *Id.*  "As with a Rule 12(b)(6) motion, a court evaluating a

facial challenge must accept the allegations in the complaint as true, and disposition of the motion becomes purely a legal question."  *Id.*  "In reviewing a facial attack under Rule 12(b)(1), the Court's inquiry is limited to the allegations in the complaint, the documents referenced in or attached to the complaint, and matters in the public record."  *Vanderklok v. United States*, 142 F. Supp. 3d 356, 359 (E.D. Pa. 2015).  In contrast, an "in fact" challenge under Rule 12(b)(1) "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'"  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (alterations adopted).  Unlike a "facial challenge, a factual challenge allows a court to weigh and consider evidence outside the pleadings."  *Id.* (alterations adopted and quotation marks omitted).

The Defendants' various motions include arguments premised on judicial and sovereign immunity.  Such arguments present "facial challenges" to this Court's jurisdiction.  *See Urella v. Pennsylvania State Troopers Ass'n*, 628 F. Supp. 2d 600, 604 (E.D. Pa. 2008) (identifying sovereign immunity as a facial challenge); *Koch v. Pechota*, No. 3:16-CV-3637-BRM-LHG, 2017 WL 4316102, at *4 (D.N.J. Sept. 28, 2017), *aff'd*, 744 F. App'x 105 (3d Cir. 2018) (holding that judicial immunity and sovereign immunity defenses are facial challenges). Accordingly, the Court limits its review to the complaint and accepts the allegations in the Amended Complaint as true in ruling on the motion.

"Ordinarily, the plaintiff bears the burden of showing that jurisdiction exists.  However, where the defendant's challenge to subject-matter jurisdiction is based on sovereign immunity, 'the party asserting the immunity bears the burden' of showing that immunity applies." *Vanderklok*, 142 F. Supp. 3d at 359 (citations omitted).  "If the Court is certain that assertion of

jurisdiction would be improper, it must dismiss such a case." *See Wilson v. Wolf*, No. 2:20-CV-04560-JDW, 2021 WL 268642, at *2 (E.D. Pa. Jan. 27, 2021).

### C.    Summary Judgment

As discussed, the Court previously ruled, upon request of the parties, that the DOC Defendants' motions to dismiss would be construed as motions for summary judgment as to the issue of exhaustion.  (Doc. Nos. 37, 59.)  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making a summary judgment determination, all inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To survive a motion for summary judgment, the non-moving party cannot rely solely on the unsupported allegations found in the pleadings.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, "a nonmoving party must adduce more than a mere scintilla of evidence in its favor." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (internal citations omitted).  "[U]nsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment.  *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010).  In making a decision as to whether there is a "genuine" issue of fact, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III.    Discussion

The Court will first address the DOC Defendants' motions.  (Doc. 27, 43, 58.)  The Court then will determine whether the motion to dismiss filed by the Federal Defendants should be granted as uncontested (Doc. No. 56) and whether, upon consideration of the United States'

statement of interest (Doc. No. 57), dismissal of Judge Mehalchick is warranted.   Finally, the Court will consider Plaintiff's motion to transfer this case to the Court of Federal Claims.  (Doc. No. 60.)

### A.   The DOC Defendants' Motions.

The Court turns first to the DOC Defendants' motions and addresses Defendants' motions for summary judgment as to whether Plaintiff properly exhausted his due process claim under 42 U.S.C. § 1983.[10]  We then turn to Defendants' arguments regarding Plaintiff's state law claims, which will be reviewed under the motion to dismiss standard.  For the reasons set forth below, we find that dismissal is appropriate for both sets of claims.

### 1.   Plaintiff's Claims Under § 1983.

#### a.   Exhaustion Requirement

Plaintiff first asserts that the DOC Defendants' withdrawal of funds from his inmate account to pay his institutional fines without appropriate procedural protections violated his Fourteenth Amendment right to due process.[11]  The DOC Defendants argue that this claim must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA").[12]  For the reasons set forth below, the Court agrees.

---

[10] As an initial matter the Court notes that even though Plaintiff did not respond, because the Court previously ordered that these motions were to be construed, in part, as motions for summary judgment, they cannot be granted as uncontested under the Local Rules of this Court.  *See* Loc. R. Civ. P. 7.1(c) ("Unless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief. . . . In the absence of a timely response, the motion may be granted as uncontested *except as provided under Federal Rule of Civil Procedure 56*, or otherwise prohibited by law." (emphasis added)).

[11] Plaintiff's due process claim against the DOC Defendants is pursuant to § 1983, the vehicle by which constitutional claims may be pursued in federal court against state officials.

[12] The DOC Defendants appear to argue that this failure to exhaust bars all of Plaintiff's claims.  But the exhaustion requirement does not sweep so far.  As the plain text of the PLRA makes clear, the exhaustion

The PLRA mandates that before prisoners can file lawsuits related to "prison conditions," they must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Otherwise, the claim is "premature and cannot be entertained" in federal court. *El v. Matson*, No. 2:21-CV-01325, 2023 WL 4134723, at *7 (W.D. Pa. June 22, 2023). This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The requirement to exhaust is mandatory; the Court may not "excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000).

The PLRA also requires prisoners to exhaust "properly." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Id.* (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Shade v. Pa. Dep't of Corr.*, No. 3:16-CV-1635, 2020 WL 1891856, at *3 (M.D. Pa. Apr. 16, 2020) ("To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules." (citing *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)). The Third Circuit has read this requirement to act as a procedural default rule. *See Spruill*, 372 F.3d at 230 ("We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component."). In other words, failure to substantially comply with the

---

requirement only applies to claims "under section 1983 of this title, or any other *Federal law*." 42 U.S.C. § 1997e(a) (emphasis added). And while Pennsylvania has its own version of the PLRA, "[u]nlike the federal PLRA, Pennsylvania's PLRA does not require exhaustion." *Barclay v. Washington*, No. CV 14-6257, 2015 WL 6102344, at *3 (E.D. Pa. Oct. 15, 2015). Thus, whether Plaintiff exhausted his administrative remedies has no impact on the viability of his state law claims.

procedural requirements of the administrative process set forth by the DOC "bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *Shade*, 2020 WL 1891856, at *3 (citing *Spruill*, 372 F.3d at 227-32; *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000)).

Prisoners are also required to exhaust even if they seek remedies "not available in grievance proceedings," such as monetary damages. *Nussle*, 534 U.S. at 524. Nevertheless, the exhaustion requirement does not apply where administrative remedies, despite nominally existing, are not "available" to the inmate. *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) ("Of course, exhaustion applies only when administrative remedies are 'available.'"); 42 U.S.C. § 1997e(a) (providing that prisoners must utilize and exhaust "administrative remedies as are *available*" (emphasis added)). Courts have deemed administrative remedies unavailable where "the procedure operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates, where it is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Shifflett*, 934 F.3d at 365 (quotation marks omitted); *see also, e.g.*, *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002) (stating that relying on erroneous instructions from prison officials renders the DC-ADM-804 process unavailable); *Grisby v. McBeth*, 810 F. App'x 136, 139 (3d Cir. 2020) (holding that if "prison officials maintain[ed] a policy of rejecting all grievances that even mention a misconduct" that would render the remedy unavailable (alterations adopted)).

The "failure to exhaust available administrative remedies is an affirmative defense." *Hill v. Harry*, No. 1:21-CV-01424, 2023 WL 6522400, at *10 (M.D. Pa. Oct. 5, 2023) (citing *Jones*, 549 U.S. at 216). Thus, in the first instance, the burden to plead and prove a failure to exhaust

"rests on the defendant." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Id.*

### b.     The DOC's Administrative Remedies

The Pennsylvania DOC maintains "three (3) different administrative remedy processes which collectively provide an inmate a route to challenge every aspect of confinement." *Shade*, 2020 WL 1891856, at *3.  These policies are: (1) the Inmate Grievance Policy, DC-ADM 804; (2) the Inmate Discipline Policy, DC-ADM 801; and (3) the Administrative Custody policy, DC-ADM 802.  *Id.*  "The three (3) programs address specific issues which may arise within the prison, and one administrative remedy may not be substituted for the other."  *Id.*  Only the first two (DC-ADM 804 and DC-ADM 801) are relevant for our purposes.

As the name suggests, DC-ADM 804 covers the procedure for general grievances filed by inmates.  As other courts have recognized, it acts like "a civil process where complaints are made regarding institutional operations and conditions of confinement."  *Cooper v. Garman*, No. 1:19-CV-02227, 2024 WL 100246, at *11 (M.D. Pa. Jan. 9, 2024).  DC-ADM 804 governs most aspects of prison life.  *Id.* at *13 ("DC-ADM 804 applies broadly to most problems, issues, or concerns of DOC inmates arising during the course of their confinement.").  However, it includes the following carve-out:

> Issues concerning a specific inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other report, a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 801, "Inmate Discipline" and/or DC-ADM 802, "Administrative Custody Procedures."

DOC-ADM 804 § 1(A)(7).[13]  "Issues other than [those] specified [in this carveout] must be addressed through the Inmate Grievance System."  *Id.* (emphasis removed).

DC-ADM 804 provides a three-tiered grievance process: (1) an initial review by a grievance officer (DC-ADM 804 § 1(C)); (2) an appeal to the facility manager (DC-ADM 804 § 2(A)); and (3) an appeal to the statewide chief grievance officer (DC-ADM 804 § 2(B)).  *See Adams v. Giroux*, Civil Action No. 1:15-cv-01321, 2016 WL 8229205, at *6 (M.D. Pa. Dec. 15, 2016) (describing this administrative appeal process).  This policy also details the "substantive and procedural requirements for inmate grievances, including requirements that the initial grievance 'must include a statement of the facts relevant to the claim,' that it 'identify individuals directly involved in the event(s),' that it 'specifically state any claims . . . concerning violations of [DOC] directives, regulations, court orders, or other law,' and that it specifically request any 'compensation or other legal relief normally available from a court.'"  *Id.*

DC-ADM 801, on the other hand, governs inmate misconduct and acts more like a criminal process.  *See Cooper*, 2024 WL 100246, at *11.  After a prison staff member files a misconduct report, inmate misconduct is treated through either an informal or formal process depending on, among other things, the severity of the offense.  DC-ADM 801 §§ 2–3.  If handled through the formal process, as appears to be the case for Plaintiff's misconduct charges, (*see* Doc. No. 9 at 19 (indicating that Plaintiff's misconduct was handled through the formal process)), an evidentiary hearing is held before a hearing examiner.  *Id.* § 3.  The hearing examiner then decides whether the inmate was guilty of the offense.  *Id.* § 4(A).  If an inmate is

---

[13] The Court cites to the versions of DOC procedures applicable to Plaintiff.  For DC-ADM 804, this would be the current version, which was made effective May 1, 2015.  For DC-ADM 801, the Court cites to the version effective June 13, 2008 through July 2, 2015, which appears to be the time frame in which Plaintiff's misconduct occurred.  However, the subsequent versions of DC-ADM 801 contain the same relevant provisions and thus the only difference may be the applicable pincites.

found guilty, the hearing examiner can impose a variety of sanctions, including, as is relevant for our purposes, reimbursement of costs for any damage caused by the inmate. *Id.* § 4(B)(4)(d). If the costs are known at the time of the misconduct hearing, meaning that the items at issue are included on a list of items created by the DOC providing the "actual financial loss or cost, of replacing standard items furnished to or used by an inmate," the hearing examiner can impose a fine without any further proceedings. *Id.* § 8(A)(1)-(3). On the other hand, if costs are not known at the time of the misconduct hearing, the prisoner will receive a "Notice of Assessment for Misconduct" which provides an estimate of the costs associated with their offense. *Id.* § 8(B)(1)–(3). Inmates can then request a hearing before a hearing examiner to challenge the amount at issue. *Id.* § 8(B)–(F).

DC-ADM 801 then provides a three-step appeals process. As our sister court explained:

> An inmate who is found guilty of a misconduct charge and who disagrees with either the finding of guilt or the sanction imposed may file an appeal with the Program Review Committee ("PRC") at his institution within fifteen calendar days of his hearing. The inmate may appeal the decision of the PRC to the Facility Manager/designee within seven calendar days of receipt of the written PRC decision. The decision of the Facility Manager/designee shall be in writing and shall be forwarded to the inmate with in seven working days of receipt of the appeal. The inmate may appeal the decision of the Facility Manager/designee to the Chief Hearing Examiner, within seven calendar days of the receipt of the Facility Manager/designee's decision. The Chief Hearing Examiner's Officer shall review and respond to every misconduct appeal to final review within seven working days of receipt of all necessary records.

*Pena v. Clark*, No. 3:19-CV-01536, 2021 WL 4477274, at *4 (M.D. Pa. Sept. 29, 2021), *aff'd*, No. 21-2931, 2022 WL 897037 (3d Cir. Mar. 28, 2022) (internal citations omitted). Generally, DC-ADM 801 provides three bases for appeal: 1) "the procedures employed were contrary to law, Department directives, or regulations"; 2) "the punishment is disproportionate to the

offense"; and/or 3) "the findings of fact were insufficient to support the decision." DC-ADM 801 § 5(A)(1). However, when the appeal relates solely to the fines assessed for their offense and the misconduct falls into the "costs are known" category, inmates may only appeal on grounds that 1) "the hearing procedures were inconsistent with the [DOC's] policy" and/or 2) "the findings of fact were insufficient to support the decision." *Id.* § 8(G)(1)(a).

### c.    Analysis

Here, the DOC Defendants argue that Plaintiff has failed to exhaust his administrative remedies because he did not file a grievance in accordance with DC-ADM 804 regarding the improper withdrawal of funds from his inmate account for his institutional fines. (Doc. No. 27 at 6; Doc. No. 43 at 6–7.) In support of their argument, the DOC Defendants have attached an affidavit from Facility Grievance Coordinator Rhonda House certifying that no grievances were filed as to this issue. (Doc. No. 27-2; Doc. No. 43-2.) The Court agrees with Defendants and finds that Plaintiff has failed to exhaust his remaining due process claim.

As to which administrative process was applicable to this claim, Defendants assert, without any reasoning, that DC-ADM 804 was the administrative process that Plaintiff was required to exhaust, not DC-ADM 801. Though a close call, the Court agrees.[14] As discussed above, DC-ADM 804 carves-out from its purview any issues related to "a *specific* inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other report, [or] a *specific* disciplinary sanction." DC-ADM 804 § 1(A)(7) (emphasis added). Here, while in passing Plaintiff claims that he "has done NOTHING through his ENTIRE detainment

---

[14]  Neither party has asserted that DC-ADM 801 is applicable. The DOC Defendants' motions lack any meaningful analysis as to which administrative process is appropriate here and as discussed above, Plaintiff failed to file any oppositions to their motions. However, Plaintiff alluded to making such an argument during the Court's June 27, 2023 status conference (June 27, 2023 Hr'g Draft Tr. at 12:12–24) and the Court's own independent review of the record revealed that this was an issue of contention.

that would warrant the deduction of $1,123.31 from his account," (Doc. No. 9 at ¶ 28), he is not

challenging a "*specific* inmate misconduct charge" or "a *specific* disciplinary sanction."  Albeit

without the benefit of a response from Plaintiff, the Court understands the crux of Plaintiff's

Amended Complaint to be that the DOC Defendants conspired to improperly deduct funds from

his account years after the relevant misconduct charges took place and without proper notice or

protections.  In other words, Plaintiff is not challenging the specific sanctions themselves, but the

*way* in which the funds were removed from his account.  His claim therefore falls outside of DC-

ADM 804's carve-out and, as Defendants assert, was properly addressed through DC-ADM

804's administrative process.[15]  And since it is undisputed that Plaintiff never filed a grievance

---

[15] If Plaintiff were in fact challenging the basis for his misconduct charges and/or the amount of the fines imposed, his claims would fall within the DC-ADM 804's carve-out and would be properly addressed through the process set forth in DC-ADM 801.  Defendants do not address this close distinction and provide no evidence whatsoever that Plaintiff did not exhaust his administrative remedies under DC-ADM 801.  Nevertheless, the only reasonable inference from the allegations in the Amended Complaint is that Plaintiff did not utilize his DC-ADM 801 remedies either.  Instead, Plaintiff appears to allege that DC-ADM 801's administrative process was unavailable for this claim.  (*See* Doc. No. 9 at ¶ 30 (stating that Defendants were permitted to deduct money from his account "without access to the DC-ADM 801 administrative appeal process as it falls outside of the three grounds in which inmates are authorized to submit appeals"); *id.* at ¶ 34 (stating that the DOC Defendants deducted $1,123.31 from his inmate account "without providing Plaintiff any post-deprivation remedies because the DC-ADM 801 and/or 804 wouldn't address such acts").)  However, by not responding to the DOC Defendants' motion, Plaintiff has failed to set forth any evidence that DC-ADM 801 was in fact unavailable to him and therefore has not carried his burden as to this issue.  *See Rinaldi*, 904 F.3d at 268 (noting that "the onus falls on the inmate to show that such remedies were unavailable to him").  The only argument that the Court can glean from the record, is that Plaintiff believed his claim fell outside of the limited bases of appeal set forth in DC-ADM 801.  (*See* Doc. No. 9 at ¶ 30.)  The Court disagrees with this position.  While Plaintiff's bases to appeal these fines were limited since they fell within the "costs are known" category of misconduct fines, Plaintiff was still able to file an appeal on certain grounds, including that "the findings of fact were insufficient to support the decision" to impose these particular fines on him.  *See* DC-ADM 801 at § 8(G)(1)(a)(2).  Since he has presented no explanation as to why this ground for appeal was insufficient or inapplicable, Plaintiff has not shown that DC-ADM 801's procedures were unavailable.  Thus, even if DC-ADM 801 were the applicable process, Plaintiff still failed to exhaust his administrative remedies.

as to the withdrawal of these institutional fines, the Court must find that Plaintiff failed to exhaust his administrative remedies as to this claim.[16]

"The purpose of the exhaustion requirement is to ensure that prison officials have a fair opportunity to correct their own errors before the initiation of a federal case." *Howard v. Chatcavage*, 570 F. App'x 117, 118 (3d Cir. 2014); *see also Nussle*, 534 U.S. at 525 ("Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  By failing to utilize his DC-ADM 804 administrative procedures, Plaintiff did not provide the DOC Defendants such an opportunity.  Plaintiff's Fourteenth Amendment due process claim against the DOC Defendants is therefore dismissed without prejudice for failure to exhaust.[17] [18]

## 2.       Plaintiff's State Law Claims

The Court turns next to Plaintiff's state law claims against the DOC Defendants for conversion, conspiracy, intentional interference with contract, promissory estoppel, and breach

---

[16] While, again, Plaintiff did not file an opposition to Defendants' motion, the Amended Complaint asserts, in passing, that DC-ADM 804 "wouldn't address such acts."  (Doc. No. 9 at ¶ 34.)  To the extent Plaintiff intended to argue that DC-ADM 804 was unavailable, thus absolving him of his obligation to exhaust, this singular, conclusory allegation is insufficient to carry his burden as to this issue.  *Rinaldi*, 904 F.3d at 268.

[17] Plaintiff initially raised a conspiracy claim under § 1983 against the DOC Defendants. While the basis for this claim is not entirely clear, it appears that Plaintiff's theory is that the DOC Defendants conspired to identify Plaintiff's inmate account and deduct funds in an unconstitutional manner.  The Court understands the Third Circuit's order, which only remanded Plaintiff's due process claim related to his institutional fines and state law claims, to affirm the dismissal of this conspiracy claim.  However, to the extent this claim remains alive, it arises under federal law and therefore would similarly be dismissed due to Plaintiff's failure to exhaust. *See Spencer v. Bush*, 543 F. App'x 209, 212 (3d Cir. 2013) (affirming dismissal of conspiracy claim for failure to exhaust administrative remedies under the PLRA).

[18] Out of an abundance caution, the Court will dismiss this claim without prejudice so that Plaintiff can exhaust his claim to the extent his administrative remedies are still available and not time barred.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be without prejudice.").  *But see* DC-ADM 804 § 1(A)(8) ("The inmate must submit a grievance to the Facility Grievance Coordinator/designee, usually the Superintendent's Assistant, within 15 working days after the event upon which the claim is based.").

of contract.  As previously noted, these issues will be reviewed under the motion to dismiss standard.  Defendants argue that these claims are all barred by sovereign immunity.  For the reasons set forth below, the Court agrees.[19]

By statute, the Commonwealth of Pennsylvania and its agencies maintain sovereign immunity from suit except where that immunity is expressly waived by the General Assembly.  1 Pa. Cons. Stat. § 2310; *Talley v. Att'y Gen.'s Off.*, No. 1:22-CV-01970, 2023 WL 5162052, at *7 (M.D. Pa. July 17, 2023) ("The DOC and the Attorney General's Office are state agencies. Accordingly, Talley's claims against the DOC and the Attorney General's Office are barred by the Eleventh Amendment." (internal citations omitted)).[20]  This same immunity is extended to "officials and employees" of the Commonwealth, in both their official and individual capacity, so long as they are "acting within the scope of their duties."  *See* 1 Pa. Cons. Stat. § 2310;

---

[19] Because all claims arising under federal law are ultimately dismissed, *see supra* p. 11–19; *infra* at p. 37–40, 44–46, the Court could decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367 (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Chapman v. United States*, 480 F. Supp. 3d 601, 613–14 (M.D. Pa. 2020) ("When a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over any remaining state law claims.").  However, since the Third Circuit remanded in part so that the Court could rule on Plaintiff's state law claims, and for purposes of judicial economy, the Court considers, and ultimately, dismisses, Plaintiff's state law claims.  *See Fralin v. County of Bucks*, 296 F. Supp. 2d 609, 617 (E.D. Pa. 2003) ("When deciding whether to exercise supplemental jurisdiction, a court should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants." (quotation marks omitted)).

[20] This immunity does not extend to certain claims in equity.  *Stackhouse v. Com., Pennsylvania State Police*, 892 A.2d 54, 59 (Pa. Commw. Ct. 2006) ("Sovereign immunity, however, will not bar certain suits in equity.").  However, the Pennsylvania Supreme Court has made clear that suits which seek injunctive relief obligating officials to take affirmative action or "to recover property from the Commonwealth are within the rule of immunity."  *Fawber v. Cohen*, 532 A.2d 429, 433–34 (Pa. 1987). Here, along with money damages, Plaintiff seeks injunctive relief in the form of his money being returned to him.  (Doc. No. 9 at ¶¶ 38–39).  While in the form of equitable relief, this request is still barred by immunity.

*Horseman v. Walton*, No. 1:22-CV-336, 2023 WL 1864882, at *2 (M.D. Pa. Feb. 9, 2023)

("Pennsylvania law provides that commonwealth employees acting within the scope of their

employment are entitled to sovereign immunity in both their official and individual capacities

from most state law claims.").

For a state official's conduct "[t]o be within the scope of employment, the conduct must

be of the same general nature as that authorized or incidental to the conduct authorized,

occurring substantially within the authorized time, and done to serve the employer." *Robertson

v. Zaken*, 271 A.3d 543 (Pa. Commw. Ct. 2021) (Table) (citing *Kull v. Guisse*, 81 A.3d 148, 153

(Pa. Commw. Ct. 2013)). Here, Plaintiff does not dispute, and the Court finds, that all the

individual DOC Defendants' conduct underlying Plaintiff's state law claims relate to their duties

as state employees.[21] As Plaintiff's own allegations make clear, the individual DOC Defendants'

actions were all within their general responsibilities at the state correctional institutions where

they worked and were all taken in furtherance of the Commonwealth's interests. (Doc. No. 9 at

¶¶ 12–13, 19–21, 31.)

Since the individual DOC Defendants were acting within the scope of their duties, all

DOC Defendants are entitled to sovereign immunity unless an express waiver is applicable.

Because a different set of waivers apply to Plaintiff's tort and contract claims, the Court

addresses them in turn below.

---

[21] The only allegations in the Amended Complaint as to Defendant John Wetzel relate to his involvement with the promulgation of the various DOC policies at issue. (Doc. No. 9 at ¶¶ 20–21.) Similarly, as to Defendants Beck and Klinefelter, the allegations relate only to their role in withdrawing funds from Plaintiff's inmate account to pay his filing fees and institutional fines. (*Id.* at ¶¶ 20, 31.) And as to Defendant Ferguson and Defendant Link, the allegations relate only to their position and responsibilities as wardens of the prison where Plaintiff was housed. (*Id.* at ¶¶ 12–13, 19, 29.) Lastly, the allegations as to Defendant Ellenberger are limited to his hearing of Plaintiff's misconduct charges and issuing fines related to those charges. (*Id.* at ¶¶ 30–31.)

### a.     Tort Claims

The Court turns first to Plaintiff's tort claims of conversion, interference with contract rights, and civil conspiracy under Pennsylvania law.  These claims do not fall within any express waiver of sovereign immunity and therefore must be dismissed.

As an initial matter, Pennsylvania has not waived immunity over intentional torts.  *See Kull*, 81 A.3d at 157 ("[S]tate employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment."); *Williams v. Lee*, No. 1:19-CV-41, 2020 WL 5704272, at *8 (W.D. Pa. Sept. 24, 2020) ("Although the Pennsylvania General Assembly 'has waived sovereign immunity for claims of negligence against Commonwealth employees in a very limited and express set of circumstances, . . . it has not done so for intentional torts.").  Since both conversion and intentional interference with contract are intentional torts under Pennsylvania law, these claims are barred by sovereign immunity.  *See Williams*, 2020 WL 5704272, at *8 ("Because conversion is an intentional tort, Defendants enjoy sovereign immunity from this claim and summary judgment is warranted."); *Williams v. Shawley*, No. 1250 C.D. 2018, 2019 WL 2619938, at *7 (Pa. Commw. Ct. June 27, 2019) ("Our Supreme Court has defined conversion as 'an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession.' A claim for conversion arises from an intentional, and not a negligent act, thereby entitling the Commonwealth defendants to sovereign immunity." (internal citations omitted)); *Henise v. York Cnty. Bd. of Comm'rs*, No. 4:06-CV-2469, 2007 WL 1684434, at *7 (M.D. Pa. June 8, 2007) (identifying intentional interference with contract as an intentional tort under Pennsylvania law).

Moreover, while the Commonwealth has waived immunity for certain causes of action arising from the "negligent act[s]" of its employees, this waiver is limited to the following: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.  42 Pa. Cons. Stat. § 8522. "Each of these exceptions is to be strictly construed."  *Urella*, 628 F. Supp. 2d at 606.  Plaintiff's civil conspiracy claim and interference with contract claim, to the extent it sounds in negligence, plainly do not fall within any of these limited exceptions and thus are subject to immunity.  *See Cindrich v. Fisher*, 512 F. Supp. 2d 396, 399 (W.D. Pa. 2007), *aff'd*, 341 F. App'x 780 (3d Cir. 2009) (finding that civil conspiracy did not fall within the Commonwealth's exceptions to sovereign immunity).  Plaintiff's conversion claim, to the extent he intended to plead it premised on negligent, as opposed to intentional, conduct, similarly falls outside of these limited waivers. The only conceivably applicable waiver for the conversion claim would be § 8522(b)(3), which permits claims against the Commonwealth related to their "care, custody, or control of personal property."  *See Garanin v. Scranton Hous. Auth.*, 286 A.3d 401 (Pa. Commw. Ct. 2022) (Table) ("A claim for negligent conversion may lie under 42 Pa. C.S. § 8522(b)(3), the personal property exception to sovereign immunity.").  However, while in some instances "the Commonwealth may be liable to an inmate for damage to or negligent handling of personal property under its care, custody or control, [Pennsylvania courts have] held that the taking of the property is not conduct that falls with that exception."  *Morgalo v. Gorniak*, 134 A.3d 1139, 1147 n. 11 (Pa. Commw. Ct. 2016) (internal citations omitted); *see also Mayo v. Oppman*, No. CV 17-311, 2018 WL 943528, at *1 (W.D. Pa. Feb. 20, 2018) (noting that Pennsylvania courts have "repeatedly

held that the taking of an inmate's property, including the confiscation of funds in an inmate's prison account, is not conduct that falls with[in]" the care, custody, or control of property exception); *Sherwood v. Pennsylvania Dep't of Corr.*, 240 A.3d 669 (Pa. Commw. Ct. 2020) (Table) (holding that the taking of money from inmate account for fines related to criminal cases did not implicate the exception in § 8522(b)(3) because "there is no liability for the *taking*" of an inmate's property (emphasis in original)); *Rega v. Pennsylvania Dep't of Corr.*, No. 244 M.D. 2017, 2018 WL 627046, at *5 (Pa. Commw. Ct. Jan. 31, 2018), *aff'd*, 200 A.3d 955 (Pa. 2019) (same).[22]  Plaintiff's claim for conversion therefore does not fall within any exception to the Commonwealth's immunity and is barred whether based in negligence or intentional conduct.

In sum, all of Plaintiff's tort claims are barred by sovereign immunity and are therefore dismissed with prejudice as to the DOC Defendants.

### b.    Contract Claims

The Court turns next to Plaintiff's claims against the DOC Defendants for breach of contract and promissory estoppel.  We find that these claims too are barred by sovereign immunity.

Pennsylvania has waived sovereign immunity with respect to certain contract claims, as defined by 62 Pa. Cons. Stat. § 1712.1.  *See* 62 Pa. Cons. Stat. § 1702 (reaffirming sovereign immunity, but waiving immunity for select types of claims, including contract claims under § 1712.1); 62 Pa. Cons. Stat. § 1712.1 ("A contractor may file a claim with the contracting

---

[22] Moreover, this exception only applies where "the property itself causes the injury."  *Urella*, 628 F. Supp. 2d at 606 (E.D. Pa. 2008).  Here, it was arguably the conduct of Defendants and not the funds themselves that caused any alleged injury and therefore this exception does not apply.  *See id.* ("[P]laintiff's pension and medical benefits did not cause the alleged injury.  Rather, it was defendant Commonwealth's alleged withholding of those benefits that harmed plaintiff.  Thus, the personal property exception does not apply to plaintiff's claims.").

officer in writing for controversies arising from a contract entered into by the

Commonwealth.").[23]  But any claims falling within this waiver are solely within the jurisdiction

of the Pennsylvania Board of Claims.[24]  *See* 62 Pa. Cons. Stat. § 1724 ("The board shall have

exclusive jurisdiction to arbitrate claims arising from . . . [a] contract entered into by a

Commonwealth agency in accordance with this part and filed with the board in accordance with

section 1712.1."); *Urella*, 628 F. Supp. 2d at 607–08 ("Pennsylvania has waived sovereign

immunity over certain breach of contract claims against Pennsylvania agencies.  However,

jurisdiction over these claims is vested exclusively in the Pennsylvania Board of Claims, and not

this Court.").  Outside of the claims in which the Board has exclusive jurisdiction, the

Commonwealth retains its sovereign immunity.  *See Roe*, 147 A.3d at 1252 (Pa. Commw. Ct.

2016) ("[C]laims over which the Board does not have exclusive control are barred by sovereign

immunity."); *Sci. Games Int'l, Inc. v. Pennsylvania*, 66 A.3d 740, 756 (Pa. 2013) ("[A]s a matter

of jurisdiction—if the General Assembly has not specifically provided by statute for such

nonmonetary relief in a claim arising from a contract entered into by a Commonwealth agency

under the Procurement Code, then either the claim is within the exclusive jurisdiction of the

Board of Claims or it is barred by sovereign immunity."); *Coppola v. Dep't of Lab. & Indus.*,

---

[23] The statute defines a "contractor" broadly as "[a] person that has entered into a contract with a Commonwealth agency" and a "contracting officer" as "[a] person authorized to enter into and administer contracts and make written determinations with respect to contracts."  62 Pa. Cons. Stat. § 103.  Further, the term "contract" is defined as "[a] type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, services or construction and executed by all parties in accordance with the act of October 15, 1980 (P.L.950, No.164), known as the Commonwealth Attorneys Act."  *Id.*

[24] Under Pennsylvania law, "[p]romissory estoppel is an equitable doctrine that makes otherwise unenforceable agreements binding.  Promissory estoppel sounds in contract law.  [Pennsylvania courts] ha[ve] broadly construed the Board of Claim's jurisdiction to include claims for damages on the theories of promissory estoppel and quasi-contract."  *Brimmeier v. Pennsylvania Tpk. Comm'n*, 147 A.3d 954, 962 (Pa. Commw. Ct. 2016), aff'd, 639 Pa. 562, 161 A.3d 253 (2017) (internal citations and quotation marks omitted, alterations adopted) (dismissing claim for promissory estoppel as barred by sovereign immunity where it fell outside of the jurisdiction of the Board of Claims); *see also Roe v. Pa. Game Comm'n*, 147 A.3d 1244, 1252 (Pa. Commw. Ct. 2016) (same).

*State Workers' Ins. Fund*, No. 693 C.D. 2020, 2021 WL 3439580, at *6 (Pa. Commw. Ct. Aug. 6, 2021) ("With regard to a 'contract controversy' . . . either the matter is within the exclusive jurisdiction of the Board of Claims, or it is barred by sovereign immunity and no remedy is available at all.").

Moreover, even if a claim falls within this limited waiver of sovereign immunity, the party seeking to enforce its contract rights must follow the administrative exhaustion requirements set forth in 62 Pa. Cons. Stats. § 1712.1 before they can bring their case in front of the Board of Claims. *See Clairton Slag, Inc. v. Dep't of Gen. Servs.*, 2 A.3d 765, 780 (Pa. Commw. Ct. 2010) ("Section 1712.1 of the Procurement Code governs the pre-litigation procedure relating to contract disputes between a contractor and the Commonwealth."). Section 1712.1 requires the aggrieved party to file their claim with the agency's "contracting officer," meaning the individual at the state agency with authority to enter contracts, within six months of the claim's accrual, or else their claim is waived in "any forum." 62 Pa. Cons. Stat. § 1712.1(b). The contracting officer must review the claim and issue "a final determination in writing" within 120 days. *Id.* § 1712.1(d). The contracting party then has 15 days from the mailing date of the final determination to file a claim with the Board of Claims. *Id.* § 1712.1(e). Exhausting administrative remedies in this manner "is mandatory, not 'optional,' and cannot be achieved by 'alternative methods.'" *Berman v. Off. of Health Care Reform*, No. 411 C.D. 2012, 2013 WL 3820093, at *3 (Pa. Commw. Ct. May 6, 2013).

Here, the Court need not decide whether Plaintiff's contract claim falls within the limited scope of § 1712.1 because either way Plaintiff's claim cannot survive in this Court. If Plaintiff's contract claim is not within the purview of § 1712.1, it is outside of the scope of Commonwealth's waiver of sovereign immunity and is therefore barred. *See Roe*, 147 A.3d at

26

1252.  On the other hand, if Plaintiff's claim falls within scope of § 1712.1, it is within the exclusive jurisdiction of the Board of Claims and cannot be heard by this Court.  *Urella*, 628 F. Supp. 2d at 607–08.  Plaintiff's claim for breach of contract against the DOC Defendants therefore must be dismissed.[25]

* * *

For the reasons set forth above, the Court finds that Plaintiff's claims arising under state law against the DOC Defendants are barred by sovereign immunity and are therefore dismissed.

### B.      The Federal Defendants' Uncontested Motion to Dismiss.

The Court turns next to the Federal Defendants' motion to dismiss, which Plaintiff failed to respond to despite numerous opportunities to do so.  Plaintiff asserts claims against the Federal Defendants for violation of the Due Process Clause of the Fourteenth Amendment,[26] conspiracy, interference with contract, conversion, promissory estoppel, and breach of contract.  For the reasons set forth below, the Court dismisses all claims against the Federal Defendants, with all but the breach of contract claim against the United States being with prejudice.

---

[25]  Out of an abundance of caution, this dismissal shall be without prejudice so that Plaintiff can file his claim in the appropriate venue, to the extent it is viable and not already time barred.  *See* 62 Pa. Cons. Stat. § 1712.1(b) (noting that the aggrieved party must file their claim with the agency's "contracting officer" within six months of the claim's accrual, or else their claim is waived in "any forum").

[26] While Plaintiff brings this claim under the Due Process Clause of the Fourteenth Amendment, this clause is inapplicable to federal officials or agencies.  *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 543 n. 21 (1987) ("The Fourteenth Amendment applies to actions by a State. The claimed association in this case is between the [defendant] and the Federal Government. Therefore, the Fourteenth Amendment does not apply.").  However, liberally construing Plaintiff's Amended Complaint, the Court views Plaintiff's claim as arising under the Due Process Clause of the Fifth Amendment.  *See In re Auto. Refinishing Paint*, 229 F.R.D. 482, 488 (E.D. Pa. 2005) ("The Fifth Amendment's Due Process Clause applies to the federal government . . . while the Fourteenth Amendment Due Process Clause applies to the states."); *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (stating that "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law'").

### 1.    Plaintiff's Contract Claim Against the United States

As an initial matter, the Court will dismiss Plaintiff's breach of contract claim against the United States without prejudice because this claim falls within the exclusive jurisdiction of the Court of Federal Claims.[27]  Plaintiff asserts a claim for breach of contract based on the authorization form that he filled out alongside his applications to proceed *in forma pauperis*. Under the Tucker Act, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1).  A related statute, the Little Tucker Act, in turn, provides that "[t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States."  28 U.S.C. § 1346(a)(1).  Taken together, these statutes provide the Court of Federal Claims with exclusive jurisdiction to adjudicate claims against the United States based in contract and seeking damages in excess of $10,000.  *See Charnetski v. Astrue*, No. 310-CV-2459, 2011 WL 13221048, at *3 (M.D. Pa. Nov. 29, 2011) ("These statutes and the case law are both clear, '[j]urisdiction in district courts under the Little Tucker Act is limited to nontort claims not exceeding $10,000.'").  This exclusive jurisdiction, however, only extends to claims against the United States itself, not its agencies or employees.  *See Stephenson v. United*

---

[27] This only includes Plaintiff's breach of contract claim, not his claim for promissory estoppel.  A claim for promissory estoppel falls outside of scope of the Tucker Act, which provides the Court of Federal Claims with exclusive jurisdiction over Plaintiff's breach of contract claim.  *See Sinclair v. United States*, 56 Fed. Cl. 270, 281 (2003) ("This court has no jurisdiction over claims for promissory estoppel, as it requires the finding of a contract implied-in-law against the Government, for which there has been no waiver of sovereign immunity."); *Jackson v. United States*, 162 Fed. Cl. 282, 293–94 (2022) (providing the same).  The Court addresses the promissory estoppel claim below with the remaining claims against the Federal Defendants.

*States*, 58 Fed. Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual.").

Since Plaintiff here is seeking damages in excess of $10,000 (Doc. Nos. 9, 60), his claim for breach of contract against the United States (but not the other Federal Defendants) falls within the exclusive jurisdiction of the Court of Federal Claims and cannot be heard by this Court.  And while a court that lacks jurisdiction can transfer the case to a court with jurisdiction if it finds that such transfer is "in the interest of justice," 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed."), here, transfer would not be in the "interest of justice" because Plaintiff's claim for breach of contract clearly lacks merit.  *See, e.g.*, *de Feyter v. Fed. Aviation Admin.*, No. 10-CV-358-JL, 2011 WL 1134657, at *7 (D.N.H. Mar. 25, 2011) ("Where, as here, a case clearly lacks merit or would not be reviewable even in the transferee court, 'it is in the interest of justice to dismiss it rather than to keep it on life support (with the inevitable result that the transferee court will pull the plug).'" (quoting *Britell v. United States*, 318 F.3d 70, 75 (1st Cir.2003)); *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) ("[T]here is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed."); *Campblin v. Chertoff*, 280 F. App'x 326 (4th Cir. 2008) (finding no abuse of discretion by the district court in refusing to transfer claim that lacked merit); *cf. Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (providing that courts have "broad discretion" in deciding "not to transfer" a case under this provision).  Indeed, as discussed below in connection with the other Federal Defendants, Plaintiff has not demonstrated that his authorization form was a contract with the United States

or that the United States breached this contract.  *See infra* at p. 42–43.  Plaintiff's claim for breach of contract against the United States is therefore dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).[28]

### 2.    Plaintiff's Remaining Claims Against Federal Defendants

The Court turns now to whether the Federal Defendants' motion to dismiss should otherwise be granted as unopposed.  When a party fails to timely respond to a motion to dismiss within 14 days, the Court is authorized to grant the motion as uncontested under our local rules.  *See* Loc. R. Civ. P. 7.1(c) ("Unless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief. . . .  *In the absence of a timely response, the motion may be granted as uncontested* except as provided under Federal Rule of Civil Procedure 56, or otherwise prohibited by law." (emphasis added));  *see also Fleming v. United States VA Med. Ctrs.*, 348 Fed. App'x. 737, 738 (3d. Cir. 2009) (affirming district court's grant of a defendant's motion to dismiss pursuant to Rule 7.1(c) as "within its authority," where the plaintiff failed to respond after approximately four weeks);  *Abdulhay v. Abdulhayoglu*, No. 5:22-CV-02066-JMG, 2022 WL 6768194, at *3 n.3 (E.D. Pa.

---

[28] Contrary to the United States' argument, (Doc. No. 63 at 5–6), even though the Court refuses to transfer on grounds that the claim is meritless, dismissal with prejudice is inappropriate because the Court lacks jurisdiction over this claim.  *See M.S. v. Marple Newtown Sch. Dist.*, 635 F. App'x 69, 73–74 (3d Cir. 2015) ("[I]t was incorrect for the District Court to dismiss the case with prejudice.  Since the District Court lacked jurisdiction over the action, it had no power to render a judgment on the merits."); *Wilson v. Squirrel,* No. CIV. A. 00-3819, 2000 WL 33154288, at *6 (E.D. Pa. Jan. 29, 2000) (dismissing claim for breach of contract against the United States without prejudice for lack of jurisdiction); *Maenza v. U.S. Postal Serv.*, No. 3:23-CV-00566-YY, 2023 WL 7928227, at *1 (D. Or. Oct. 17, 2023), report and recommendation adopted, No. 3:23-CV-00566-YY, 2023 WL 7924807 (D. Or. Nov. 16, 2023) ("Defendant asks the court to dismiss this case with prejudice.  However, the proper remedy is to dismiss the case without prejudice so that plaintiff 'may properly bring suit against the United States in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491, or in this court under 28 U.S.C. § 1346.'").

Oct. 11, 2022) ("It is within a district court's discretion to grant a motion to dismiss as unopposed pursuant to Local Civil Rule 7.1(c).").

The Court acknowledges that the Third Circuit generally disfavors the disposition of a motion to dismiss for failure to comply with a procedural rule. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) ("The fact is that if a motion to dismiss is granted solely because it has not been opposed, the case is simply not being dismissed because the complaint has failed to state a claim upon which relief may be granted. Rather, it is dismissed as a sanction for failure to comply with the local court rule."). Instead, it is preferred that a district court undertake a merits analysis of the complaint, even if a plaintiff has failed to respond to a motion to dismiss. *See Gary v. Pa. Human Relations Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012) ("[M]otions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions."); *Stackhouse*, 951 F.2d at 30 ("[T]his action should not have been dismissed solely on the basis of the local rule without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in Fed. R. Civ. P. 12(b)(6).").

This general guidance notwithstanding, the Third Circuit has clarified that the Court's local rules are not entirely without force and effect:

> In reaching our result, we do not suggest that the district court may never rely on the local rule to treat a motion to dismiss as unopposed and subject to a dismissal without a merits analysis. There may be some cases where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney and in that situation the rule may be appropriately invoked. *Nor do we suggest that if a party fails to comply with the rule after a specific direction to comply from the court, the rule cannot be invoked.* Thus, our holding is not broad.

*Stackhouse*, 951 F.2d at 30 (emphasis added).  In granting a motion to dismiss under these circumstances, the Third Circuit has instructed that "a district court must analyze the relevant factors set forth in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), before concluding that the sanction of dismissal is warranted."  *Gary*, 497 F. App'x at 226; *see also Hernandez v. Palakovich*, 293 F. App'x 890, 895 (3d Cir. 2008) (rejecting "the proposition that a district court may dismiss a case without considering the *Poulis* factors whenever a plaintiff fails to comply with a briefing deadline").  The six *Poulis* factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure [to participate in the prosecution of the case]; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

727 F.2d at 868.  "[N]ot all of the *Poulis* factors need be satisfied in order to dismiss a complaint."  *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

Here, as discussed above, Plaintiff failed to file an opposition to the Federal Defendants' motion to dismiss.  Accordingly, the Court will address the *Poulis* factors in turn to determine whether the sanction of dismissal is warranted.

*(1)    Personal Responsibility.*  The first *Poulis* factor requires the Court to consider the extent of Plaintiff's personal responsibility in failing to respond to the motion to dismiss. Plaintiff was repeatedly notified that he was obligated to respond to all of the Defendants' dispositive motions and warned that if he failed to respond to the Federal Defendants' motion to dismiss in particular, it would be dismissed as uncontested.  (*See* Doc. No. 64 at 1 n.2 ("Plaintiff should note that this motion, unlike the motions brought by the DOC Defendants, is only a motion to dismiss.  **Plaintiff is warned that, under this Court's local rules, a motion to**

**dismiss may be granted as uncontested if a party does not respond.  *See* Loc. R. Civ. P.**

**7.1.**” (emphasis in original)); *see also* Doc. No. 59 (ordering response to Defendants' motions).)

When Plaintiff missed his first deadline, the Court even granted him additional time to respond

*sua sponte*.  (Doc. No. 64.)  The docket reflects that both the original briefing Order and the

Order granting Plaintiff an extension were in fact mailed to him and the Court never received any

indication that the mail was returned as undeliverable.  Yet, that new deadline came and went

without any response from Plaintiff.  And because Plaintiff is proceeding *pro se*, his failure to

respond to the Federal Defendants' motion cannot be attributed to anyone but him.  *See Nieves v.*

*Cnty. to Courthouse to S.C.I. State Prison Transp.,* No. 4:20-CV-1193, 2022 WL 19350600, at

*8 (M.D. Pa. Aug. 29, 2022), *report and recommendation adopted*, No. 4:20-CV-1193, 2022

WL 19350590 (M.D. Pa. Sept. 16, 2022) (finding that the *pro se* plaintiff who had been directed

to respond to motion to dismiss no less than four times “was aware of this obligation” and that

“the failure to file a brief in opposition cannot be attributed to anyone but Plaintiff”); *Malibu*

*Media, LLC v. Paek*, Civil Action No. 13-2766, 2015 WL 779494, at *2 (E.D. Pa. Feb. 23, 2015)

(“Because Defendant is proceeding *pro se*, he alone is responsible for his failure to comply with

this Court's orders.”); *Jimenez v. Rosenbaum-Cunningham, Inc.*, Civil Action No. 07-1066, 2010

WL 1303449, at *6 (E.D. Pa. Mar. 31, 2010) (holding that the first *Poulis* factor weighed in

favor of default judgment even though the defendant did not have counsel because “his *pro se*

status [does not] excuse his failure to participate in the litigation” and he failed to present “any

excuse for his non-participation in the litigation and his disregard of [the court's] Orders”).

Given the number of chances provided to Plaintiff, the first factor weighs in favor of granting the motion to dismiss as uncontested.[29]

    *(2)*    *Prejudice.*  Next, the Court considers the prejudice that Plaintiff's failure to respond has caused the Federal Defendants.  A finding of prejudice in the context of *Poulis* does not require "irremediable harm," rather, "the burden imposed by impeding a party's ability to effectively prepare a full and complete trial strategy is sufficiently prejudicial."  *Williams-Bearden v. Clouser*, No. 4:20-CV-1495, 2021 WL 4743705, at *2 (M.D. Pa. Oct. 12, 2021) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003) (alterations adopted)); *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) ("Prejudice need not be irremediable harm that could not be alleviated by the court's reopening discovery and postponing trial.") (alterations adopted and quotation marks omitted).  This case has been pending for just under 5 years.  While it is true that the drawn-out nature of this case is largely the result of Plaintiff's successful appeal and related stay, Plaintiff's failure to respond to this motion for over seven months has further "frustrate[d] and delay[ed] the resolution of this matter." *Williams-Bearden*, 2021 WL 4743705, at *2 (finding prejudice to the defendants where the plaintiffs had failed to respond to motion to dismiss and/or summary judgment for almost six months); *Nieves*, 2022 WL 19350600, at *8 (finding the defendant's "interest in the timely resolution of this case has been prejudiced" where case had been pending for two years without resolution of motion to dismiss).  The Court thus finds that Plaintiff's failure to respond has

---

[29] The Court notes that, in connection with the DOC Defendants' motions, Plaintiff had previously taken the mistaken position that because the Third Circuit reversed the Court's *sua sponte* dismissal of his due process claim related to his institutional fines, he did not need to address any motions to dismiss.  (Doc. No. 34; June 27, 2023 Hr'g Draft Tr. at 10:12–18, 11:7–12.)  However, the Court has repeatedly and unambiguously told Plaintiff that this view is incorrect, and that Defendants were entitled to file a motion to dismiss after the Complaint was served.  (Doc. No. 35; June 27, 2023 Hr'g Draft Tr. at 10:9–11:7.)  Thus, to extent this explains Plaintiff's refusal to respond to the Federal Defendants' motion to dismiss, the Court finds it meritless and in blatant disregard of the Court's prior Orders.

prejudiced the Federal Defendants' interest in a timely resolution of this case and the second

factor weighs slightly in favor of granting the motion to dismiss.

   *(3)*  *History of Dilatoriness.* The Court also considers whether Plaintiff has engaged

in a pattern of dilatory conduct throughout the course of the litigation.  *See Adams*, 29 F.3d at

875 ("A party's problematic acts must be evaluated in light of his behavior over the life of the

case.").  "Conduct that occurs one or two times is insufficient to demonstrate a history of

dilatoriness," however, "extensive or repeated delay or delinquency constitutes a history of

dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in

complying with court orders."  *Nieves*, 2022 WL 19350600, at *9 (cleaned up and internal

citations omitted).  Outside of this motion to dismiss, the only instance of dilatoriness on the part

of Plaintiff was his failure to respond to the DOC Defendants' motions.  These motions,

however, were on the same briefing schedule as the Federal Defendants' motion to dismiss.

Thus, the Court finds this factor neutral.

   *(4)*  *Willful or Bad Faith Conduct.* The fourth factor requires the Court to assess

whether Plaintiff's failure to respond to the motions to dismiss was willful or in bad faith.

"'Willfulness involves intentional or self-serving behavior,' and not mere negligence."  *Nieves*,

2022 WL 19350600, at *9 (quoting *Adams*, 29 F.3d at 875).  A review of the docket shows that

the Court's numerous Orders were mailed to Plaintiff and that he intentionally failed to respond.

*See Williams-Bearden*, 2021 WL 4743705, at *2 ("Here, Plaintiffs have violated the local rules,

and have failed to comply with a Court order directing them to take specific action in this case,

the Court is compelled to conclude that Plaintiffs' actions were not negligent, but instead reflect

an intentional disregard for the Court's local rules and its order.  Thus, Plaintiffs' silence and

failure to litigate this action lead to an inference that Plaintiffs have willfully abandoned this

case."); *Lurwick v. Lehigh Valley Health Network, Inc.*, No. CV 18-0981, 2019 WL 2060070, at *5 (E.D. Pa. May 9, 2019) ("Courts in this District have recently held where there is no indication that a plaintiff's failure was from excusable neglect, 'the conclusion that their failure is willful is inescapable.'").  Providing further evidence of Plaintiff's intentional disregard of his obligation to respond is the fact that, following the Federal Defendants' motion to dismiss and after the Court entered a briefing schedule (Doc. No. 59), Plaintiff filed a motion to transfer this matter to the Court of the Federal Claims (Doc. No. 60).  This motion seized on an argument presented by the Federal Defendants in their motion to dismiss, suggesting that he received and read their brief.   Thus, rather than providing a response to the motion to dismiss in accordance with this Court's order, Plaintiff filed a separate motion for relief.  This intentional dodging of his obligation to respond further supports dismissal.  *See Nieves*, 2022 WL 19350600, at *9 (concluding that plaintiff's failure to respond to motion to dismiss was "not accidental or inadvertent" where plaintiff continued to file miscellaneous documents after being ordered to respond to the motion).

> (5)   *Effectiveness of Other Sanctions.* The fifth factor, the effectiveness of other sanctions, also weighs in favor of dismissal.  The Court acknowledges that "[d]ismissal is a sanction of last resort, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering dismissal." *Nieves*, 2022 WL 19350600, at *9 (citing *Poulis*, 747 F.2d at 868.)  But here, where Plaintiff is imprisoned, "proceeding *pro se* and *in forma pauperis*, and there is no evidence to support a reasonable inference that he would be able to pay monetary sanctions," the Court is left with few options.  *Id.*  And Plaintiff's failure to comply with the Court's previous orders directing him to file a response supports the inference that further orders would not be effective.  *See id.*; *Williams-Bearden*, 2021 WL 4743705, at *2; *see also Lurwick*,

2019 WL 2060070, at *5 ("When a Plaintiff fails to prosecute his action, outside of dismissal of the action, the Court cannot envision a sanction that would be appropriate.").  Therefore, the Court finds this factor weighs in favor of granting the Federal Defendants' motion as uncontested.

(6)     *Meritoriousness of Claims or Defenses.*  Finally, the Court turns to the sixth factor: the meritoriousness of Plaintiff's claims.  According to *Poulis*, "a claim will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." 747 F.2d at 870.  "Generally, in determining whether a plaintiff's claim is meritorious, [courts] use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (citing *Poulis*, 747 F.2d at 869–70).

Upon review of the Amended Complaint (Doc. No. 9) and the Federal Defendants' Motion to Dismiss (Doc. No. 56), the Court finds that this factor weighs significantly in favor of dismissing Plaintiff's claims.[30]

### a.     Individual Capacity Claims Against the Clerk of Court and Quasi-Judicial Immunity

First, Plaintiff cannot state a claim against the unnamed clerk of the Middle District in their individual capacity because any such claims are barred by immunity.[31]  Court personnel are

---

[30] Indeed, even if the Court was not inclined to grant the Federal Defendants' motion to dismiss as uncontested, the Court would dismiss Plaintiff's complaint on the merits for the same reasons outlined below.

[31] While the United States argued in their motion to dismiss that quasi-judicial immunity warrants dismissal of all claims against all Federal Defendants, (Doc. No. 56-2 at 9–11) the Court finds this defense applicable only to the unknown clerk in their individual capacity.  *See Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, 527 F. Supp. 3d 722, 772 (E.D. Pa. 2021), *aff'd*, No. 21-1662, 2021 WL 6101254 (3d Cir. Dec. 21, 2021) ("[Q]uasi-judicial immunity is available only when the official is sued in his or her individual capacity."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("When it comes to defenses to liability, an official in a personal-capacity action may, depending

absolutely immunized from a suit for damages through quasi-judicial immunity for their "discretionary actions," *Wallace v. Abell*, 318 F. App'x 96, 99 (3d Cir. 2009), and "when performing duties required by statute or at the direction of judicial authority," *Huber v. Fudeman*, No. 23-CV-0592, 2023 WL 2405243, at *3 (E.D. Pa. Mar. 8, 2023) (collecting cases); *see also Addlespurger v. Corbett*, 461 F. App'x 82, 85 (3d Cir. 2012) (holding that court personnel are immune from suit when conducting acts that are an "integral part of the judicial process," such as "carrying out facially valid court orders").  Moreover, such personnel are "qualifiedly immunized for nondiscretionary acts such as entering orders and notifying parties." *Wallace* 318 F. App'x at 99.  Here, the unknown clerk's sole involvement with this case relates to their receipt of filing fees from the correctional facilities housing Plaintiff.  Such actions were taken pursuant to both Judge Mehalchick's order granting Plaintiff *in forma pauperis* status and 28 U.S.C. § 1915(b), which governs the receipt of funds from correctional facilities by the clerk of court once *in forma pauperis* status is established.  Since such actions were pursuant to both judicial and statutory directives, the unknown clerk is entitled to absolute, quasi-judicial immunity.  *See Huber*, 2023 WL 2405243, at *3 (finding court personnel absolutely immune from suit where he returned the plaintiff's submission for failure to pay filing fee); *Wazney v. Campbell*, No. CV 6:18-2610-HMH-KFM, 2018 WL 6065499, at *1 (D.S.C. Nov. 20, 2018), *aff'd sub nom. Wazney v. South Carolina*, 767 F. App'x 562 (4th Cir. 2019) (noting that "[c]lerks of court are afforded quasi-judicial immunity from suit on claims involving 'tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune'" which includes "filing documents and assessing filing fees").  And even if this case fell outside of the scope of quasi-judicial immunity, the unknown clerk would likely

---

on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law.  In an official-capacity action, these defenses are unavailable." (internal citations omitted)).

be entitled to qualified immunity because the Amended Complaint has failed to clearly identify

how the clerk violated Plaintiff's constitutional or statutory rights. *See Mirabella v. Villard*, 853

F.3d 641, 648 (3d Cir. 2017) ("Qualified immunity shields federal and state officials from money

damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or

constitutional right, and (2) that the right was 'clearly established' at the time of the challenged

conduct."); *Williams v. Kunz*, No. CIV. 06-3072 (RBK), 2008 WL 846529, at *3–4 (E.D. Pa.

Mar. 28, 2008) (finding court personnel qualifiedly immune where it was unclear how

constitutional rights were violated); *cf. Wallace v. Abell*, 217 F. App'x 124, 127 (3d Cir. 2007)

(finding court personnel immune under qualified immunity for allegations regarding delays in

sending court order). The claims against the unknown clerk in their official capacity thus lack

merit.

### b.     Plaintiff's Remaining Claims

Plaintiff has also failed to set forth meritorious claims against the United States, the

Clerk's Office for the Middle District and the unknown clerk in their official capacity. The

Court addresses Plaintiff's constitutional, tort, and contract claims in turn.

### i.     Plaintiff's Constitutional Claims

As to Plaintiff's *Bivens* action for due process violations, not only is such a cause of

action unlikely available, *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017) (noting

that the Supreme Court "has repeatedly refused to recognize *Bivens* actions in any new

contexts," meaning constitutional claims outside of those arising under Fourth Amendment, the

Fifth Amendment Due Process Clause (in the context of sex discrimination), and the Eight

Amendment's prohibition on cruel and unusual punishment), but even if one were to exist here,

the only proper defendant to such a claim is a federal officer in their *individual* capacity. *See*

*Debrew v. Auman*, 354 F. App'x 639, 641 (3d Cir. 2009) (noting that a "*Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity"). *Bivens* Claims against the United States, its agencies, and its employees in their official capacity are barred by the United States' sovereign immunity. *See Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007) (providing the same). Thus, Plaintiff cannot state a claim for violation of his due process rights against the Federal Defendants under *Bivens*. *See Talley v. Wetzel*, No. 1:22-CV-01712, 2023 WL 5163289, at *4 (M.D. Pa. July 17, 2023) ("To the extent that Talley is seeking damages against the United States and Judge Savage in his official capacity for constitutional violations, it is well settled that sovereign immunity bars *Bivens* actions against the United States and, by extension, against federal officials sued in their official capacities."). And even if such an action were cognizable under *Bivens*, Plaintiff's remaining due process claim relates only to the withdrawal of his institutional fines. The Federal Defendants were completely uninvolved with the deduction of these funds and therefore cannot be held liable for any related violations of his due process rights.[32] Plaintiff's constitutional claim against the Federal Defendants thus lacks merit against the Federal Defendants.

---

[32] The Federal Defendants set forth a litany of arguments as to Plaintiff's previously dismissed due process claim related to the withdrawal and loss of his filing fees. (Doc. No. 56-2 at 19–26.) However, as previously discussed, the Court understands the Third Circuit to have affirmed the dismissal of his due process claim as it relates to these funds. *See supra* at 5 n.7. To the extent this claim in fact remains alive, it would also lack merit because it is not cognizable under *Bivens*.

### ii.    Plaintiff's Tort Claims

Plaintiff's state law tort claims of conversion, conspiracy, and interference with contract fare no better.  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  The Federal Tort Claims Act ("FTCA") provides such a waiver for suits "against the United States . . . for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  However, even where this waiver applies, the United States is the only proper defendant for such a claim. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA."); *Kunz*, 2008 WL 846529, at *2 ("[T]he only proper defendant in an FTCA claim is the United States.").  Moreover, this waiver will not attach unless the plaintiff has exhausted his administrative remedies.  *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally decided by the agency in writing and sent by certified or registered mail."); *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015) (providing that a plaintiff's "failure to exhaust [administrative remedies] deprive[s] the court of jurisdiction to hear [an FTCA] claim.").

Here, as an initial matter, while Plaintiff has brought forth his state law tort claims against all the Federal Defendants, everyone except the United States is an improper defendant and therefore entitled to sovereign immunity.  And as to the United States, Plaintiff has not alleged or otherwise shown that he exhausted his administrative remedies with the Administrative Office of the United States Courts, which is the "agency responsible for considering claims for money damages under the FTCA for negligent or wrongful conduct by officers and employees of the United States Courts."  *Wilson v. United States*, 735 F. App'x 50, 52 (3d Cir. 2018) (holding that the "District Court lacked jurisdiction over Wilson's federal tort claims" because he "did not allege that he presented his claims to the Administrative Office of the United States Courts (AO)"); *Guilford v. FCI Williamsburg*, No. 22-CV-1945, 2022 WL 2192945, at *2 (E.D. Pa. June 16, 2022) ("A plaintiff must plead administrative exhaustion in an FTCA case." (alterations adopted and quotation marks omitted)).  The United States is thus entitled to immunity from Plaintiff's tort claims as well.

### iii.      Plaintiff's Contract Claims

And finally, the Court finds that Plaintiff's claims for breach of contract and promissory estoppel also lack merit.[33]  First, as to Plaintiff's breach of contract claim, even assuming that Plaintiff's *in forma pauperis* authorization form was a contract, which is a dubious proposition, *see Dudley v. United States*, 61 Fed. Cl. 685, 688 (2004) (rejecting breach of contract claim based on *in forma pauperis* authorization form and holding that "withdrawals from the plaintiff's prison account are regulated by statute and not by contract"), Plaintiff has not plausibly alleged the Federal Defendants breached that agreement.  The authorization merely permitted the

---

[33] As discussed above, the Court cannot reach the merits of Plaintiff's breach of contract claim against the United States because such a claim is within the exclusive jurisdiction of the Court of Federal Claims. *See supra* at p. 28–30.  To the extent the claim against the United States fell outside of the jurisdiction of the Court of Federal Claims, it would fail for this same reason.

"agency holding [Plaintiff] in custody to send to the Clerk of Court, United States District Court for the Middle District of Pennsylvania, a certified copy of the statement for the past six months of [his] trust fund account" and to "calculate and disburse funds from [his] inmate account" to pay his filing fees.  *See* Doc. No. 3, *Talley v. Glessner*, 15-cv-407 (M.D. Pa. Feb. 2, 2015). Plaintiff has not plausibly alleged that the Federal Defendants failed to comply with the terms of this agreement in any way.  Thus, Plaintiff's breach of contract claim against these Defendants lacks merit.

Plaintiff's claim for promissory estoppel, in turn, is likely barred by the United States' sovereign immunity.  While, as discussed above, Congress has waived the United States' sovereign immunity from certain contract claims through the Tucker Act, this waiver does not extend to claims for promissory estoppel.  *See Steinberg v. United States*, 90 Fed. Cl. 435, 443 (2009) ("Promissory estoppel . . . requires the court find an implied-in-law contract, a claim for which the United States has not waived its sovereign immunity."); *Hercules Inc. v. U.S.*, 516 U.S. 417, 423 (1996) ("We have repeatedly held that this [Tucker Act] jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law."). And since the Court is not independently aware of any other basis to find immunity waived for a promissory estoppel claim, this claim lacks merit as well.  *See Jablon v. United States*, 657 F.2d 1064, 1070 (9th Cir. 1981) ("[T]he government has not waived its sovereign immunity with regard to a promissory estoppel cause of action.").

\* \* \*

Taking these factors together, five factors weigh in favor of dismissal, whereas one is neutral.  The Court thus finds that Plaintiff has abandoned his claims against the Federal Defendants; our analysis of the *Poulis* factors leads us to conclude that dismissal of these

Defendants is appropriate.  Thus, the Federal Defendants' motion to dismiss is granted and all claims against them are dismissed with prejudice, except as to the breach of contract claim against the United States, which is dismissed without prejudice.  *See, e.g., Jones v. Brouse*, CIVIL NO. 3:15-CV-0680, 2016 WL 1242347, at *4 (M.D. Pa. Mar. 30, 2016) ("Because plaintiff has failed to oppose the motion to dismiss, granting leave to amend would be futile.").

### C.    Judge Mehalchick's Statement of Interest

That leaves Plaintiff's claims against Judge Mehalchick.  The United States filed a statement of interest on Judge Mehalchick's behalf, arguing that all claims against her are barred by judicial immunity.  (Doc. No. 58.)  The Court agrees and will dismiss Plaintiff's claims against Judge Mehalchick with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006).  This immunity extends to magistrate judges.  *See William-Whitfield v. Commonwealth Lehigh Cnty. Prison*, No. CV 21-4544, 2022 WL 1291527, at *6 (E.D. Pa. Apr. 29, 2022) ("Both judges of general and limited jurisdiction, including magisterial district judges, are entitled to judicial immunity.").  When applicable, judicial immunity bars not only claims for money damage, but also most claims for injunctive relief.  *See Gedeon v. Pratter*, No. 23-CV-2841, 2023 WL 4918323, at *2 (E.D. Pa. July 31, 2023) ("[T]he United States Court of Appeals for the Third Circuit has suggested that federal judges are immune to claims for injunctive relief as well."); *see also Martinez v. United States*, 838 F. App'x 662, 664 (3d Cir. 2020) ("We have suggested that federal judges may be immune to claims for injunctive relief."); *cf. Azubuko*, 443 F.3d at 304 ("Because Azubuko has not alleged that a declaratory decree was violated or that declaratory relief is unavailable, and because the injunctive relief sought by Azubuko does not address the

44

actions of Judge Royal other than in his judicial capacity, his claim for injunctive relief is barred.").

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Azubuko*, 443 F.3d at 303–04 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)); *Huber*, 2023 WL 2405243, at *3 ("Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt.").  Instead, there are only two circumstances in which a plaintiff can overcome judicial immunity:  "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (internal citations omitted).  "With respect to the first inquiry, 'the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000) (quoting *Stump*, 435 U.S. at 362).  And regarding the second exception, "where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000).  "In determining whether judicial immunity applies, the court 'must decide whether the Complaint set forth allegations that, taken as true, establish that the application of an exception to the doctrine of absolute judicial immunity is above the speculative level.'" *William-Whitfield*, 2022 WL 1291527, at *6 (quoting *Kirkland v. DiLeo*, 581 F. App'x 111, 114–15 (3d Cir. 2014)).

Here, the only allegations in the Amended Complaint relating to Judge Mehalchick are that she was assigned to all three of Plaintiff's civil actions (Doc. No. 9 at ¶ 8) and granted his motions to proceed *in forma pauperis* (*id.* at ¶ 9).  Such actions are plainly within the scope of Judge Mehalchick's judicial responsibilities and there is no allegation that they were done without any jurisdiction.  *See Talley*, 2023 WL 5162052, at *5 ("Judge Savage is entitled to judicial immunity because it is clear that Judge Savage was acting in his judicial capacity and not in the clear absence of all jurisdiction.").  And even if the Court were to credit Plaintiff's inadequately pled allegation that Judge Mehalchick was somehow involved in a conspiracy to deprive Plaintiff of his filing fees, such actions would still fall within the scope of her judicial immunity.  *See Harvey v. Loftus*, No. 10-CV-2505, 2012 WL 12973185, at *1 (M.D. Pa. June 8, 2012), *aff'd*, 505 F. App'x 87 (3d Cir. 2012) ("Absolute judicial immunity shields judges against allegations of malice or corruption without regard to motive or mistake.  This is true even where the alleged act was the purported result of a conspiracy.").  The Court thus finds that all of Plaintiff's claims against Judge Mehalchick are barred by judicial immunity and should be dismissed with prejudice under Rule 12(b)(1).[34]

---

[34] As noted earlier, Plaintiff's claims are against Judge Mehalchick in her official and individual capacity. (Doc. No. 9 at ¶ 7.)  There is conflicting authority as to whether judicial immunity applies only to suits against judges in their individual capacity, or if it extends to official capacity suits as well.  *Compare Williams v. Kunz*, No. CIV. 06-3072 (RBK), 2008 WL 846529, at *3 (E.D. Pa. Mar. 28, 2008) ("Judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit under the doctrine of judicial immunity.") *with Mergl v. Wallace*, No. 2:21-CV-1335, 2022 WL 4591394, at *9 n.5 (W.D. Pa. Sept. 30, 2022) ("[W]hen a judge is sued in their individual capacity, they are indeed entitled to immunity for all actions taken in the scope of carrying out their judicial duties. However, . . . judicial actors sued in their official capacities have 'no immunity whatsoever.'" (internal citations omitted)); *see also Nat'l Ass'n for the Advancement of Multijurisdictional Prac. (NAAMJP) v. Castille*, 66 F. Supp. 3d 633, 643 (E.D. Pa. 2014), *aff'd*, 799 F.3d 216 (3d Cir. 2015) (identifying the conflicting authority).  However, even assuming Plaintiff's claims against Judge Mehalchick in her official capacity were not barred by judicial immunity, they nevertheless fail for the same reasons identified with respect to the other Federal Defendants: 1) Judge Mehalchick, in her official capacity, is not a proper defendant to a *Bivens* action, if one were to exist; 2) Judge Mehalchick is not a proper defendant to a claim under the Federal Tort Claims Act and 3) Plaintiff has failed to allege that Judge

### D.     Plaintiff's Motion to Transfer

Finally, the Court turns to Plaintiff's motion to transfer.  Utilizing an argument made by the Federal Defendants that this Court lacks jurisdiction over Plaintiff's breach of contract claim because he seeks damages more than the $10,000, Plaintiff filed a motion to transfer this entire case to the Court of Federal Claims.  (Doc. No. 60).  As an initial matter, Plaintiff's request sweeps too broadly, as the Court of Federal Claims only has jurisdiction over non-tort claims against the United States itself.  *See Easely v. United States*, No. 20-358, 2020 WL 6689090, at *4 (Fed. Cl. Nov. 12, 2020) ("This Court's jurisdiction 'is limited to suits against the United States.'  Since the Court's jurisdiction is limited to a single defendant, this Court 'lacks jurisdiction over . . . claims against states, localities, state and local government officials, state courts, state prisons, or state employees.'"); *Stephenson*, 58 Fed. Cl. at 190 ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual.").  And as discussed above, the Court finds that dismissal of Plaintiff's claim against the United States for breach of contract is more appropriate than transfer.  *See supra* at p. 28–30.  Thus, Plaintiff's request to transfer this case is denied.

## IV.     Conclusion

For the reasons set forth above, the Court will grant the DOC Defendants' motions, dismiss the Amended Complaint in its entirety against the Federal Defendants and Judge

---

Mehalchick entered into or breached a contract between her and Plaintiff, and the Court lacks jurisdiction over the promissory estoppel claim.  *See supra* at p. 39–43.  While dismissal of these claims is premised on a failure to state a claim as opposed to jurisdictional grounds, the Court has authority to conduct such a review as a part of its obligation to screen the complaints of plaintiffs granted *in forma pauperis* status. *See* 28 U.S.C. 1915(e)(2) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case *at any time* if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." (emphasis added)).

Mehalchick, and will deny Plaintiff's motion to transfer.[35]  All claims are dismissed with prejudice, except for the breach of contract and due process claims against the DOC Defendants and the breach of contract claim against the United States, which are dismissed without prejudice.  An appropriate Order follows.

---

[35] The Court notes that no motions were filed on behalf of the unknown individual DOC defendants. However, because all named Defendants have been dismissed, these claims against the unknown individuals cannot stand.  *See Baker v. United States*, 642 F. App'x 147, 152 (3d Cir. 2016) ("The case law is clear that 'an action cannot be maintained solely against Doe defendants.'"); *Phillips v. Superintendent Chester SCI*, 739 F. App'x 125, 131 (3d Cir. 2018) ("Once the District Court dismissed all of the claims against the named defendants, this claim against the Doe Defendants could not proceed."); *Breslin v. City & Cnty. of Philadelphia*, 92 F.R.D. 764, 765 (E.D. Pa. 1981) (dismissing complaint against unnamed defendants where it was dismissed against all the named defendants).